Office. The next case on the calendar this morning is No. 21-13245, Lawanna Tynes v. Florida Department of Juvenile Justice. Ms. Leininger, you have reserved five minutes for rebuttal, correct? Yes, Your Honor. May it please the Court, my name is Carrie Leininger and I represent the Florida Department of Juvenile Justice in this appeal. The Department seeks reversal of the judgment below because there was no evidence submitted at trial of race or sex discrimination in the Department's decision to terminate the employment of the plaintiff. The plaintiff was employed at the time as the superintendent in charge of the Broward County Juvenile Detention Center. She was terminated following an extraordinary event on November 15, 2015. On that day, there were 15 codes called in a single day. A code is a call for officer assistance. It was undisputed at trial. Indeed, it was agreed by all of the parties that this day was an extraordinarily bad day for the facility. The plaintiff admitted it was not a good day. The plaintiff's supervisor and very favorable witness for her throughout the trial, really throughout the proceedings, testified that she had never heard of another facility experiencing 15 codes in a single day and it indicated that the staff had lost control of the facility. I want to make sure I understand the record. Was Ms. Tynes actually at the facility that day? No, she was not. It was on a Sunday and typically she would have her assistant superintendent would be in charge and so she was not physically present. Couldn't that just as easily suggest that she did such a great job holding things together that she wasn't there and there was a big problem? Why couldn't the jury have thought that? That's not a reasonable inference when her own supervisor says it's a complete lack of control. This is a systemic failure and when you're the superintendent, you're responsible, you are the person ultimately responsible for ensuring the safety and health of those juveniles and of the staff. And so this was not a single isolated incident that went bad. There was a high frequency of problems that occurred there on November 15th and so Was there anything in her records before that day that reflected any reprimands or negative feedback or anything like that? No, no. She had, you know, she, there had certainly been times where her facility had areas that needed improvement. That's normal for facilities, but that November 15th incident revealed a lack of control, a lack of following the processes that resulted in 15 codes being called in a day. And when you're the Department of Juvenile Justice, it is not just a legitimate business interest to have safe control in your facilities, it is the legitimate business interest. And so when you have a situation like you had on November 15th, which was unprecedented, it is certainly a valid, legitimate reason for the Department of Juvenile Justice to decide that the person ultimately responsible for that facility is terminated. And so there was no evidence provided of there being another situation even remotely close. So this is No, no evidence I think is a pretty big statement and I think certainly there was evidence of racial discrimination. Now maybe you don't agree that that's what happened, but I think it's an overstatement to say there was no evidence of that. Well, Your Honor, there may be evidence that some people thought that was unfair, but one of the things to look at is what's not in evidence in this case. There's not a single piece of evidence that the decision maker ever made a racial or sexist comment. There's not a single piece of evidence. So do our precedents require racist or sexist comments in order for a verdict to stand? No, but when you're relying on the convincing mosaic argument, and the plaintiff put forth two different theories to prove the substantially similar element of the prima facie case of employment discrimination. I mean, the prima facie case is no longer an issue after a jury verdict. I mean, once the jury has decided, whether the kind of evidentiary framework that the Supreme Court set out many years ago is followed falls away. And the question is whether a reasonable jury could conclude that these violations occurred. Isn't that right? It is, Your Honor, but what the courts frequently look at is under either theory, whether you're using the convincing mosaic, is what other evidence is there of intentional racial discrimination, not unfairness, intentional racial discrimination. There's no evidence that the decision maker in this case routinely treated black or female employees unfavorably. There's no evidence that she made racial or sexist comments. And these are the types of evidence that this court has looked at and considered. Generally, in summary judgment, right? But also, Your Honor, after there has been a jury verdict, and you look at what evidence was presented, there was no evidence that the department had a reason or a motivation to discriminate against the plaintiff because of her sex or because of her race. I actually have, just because you're running out of time, I want to make sure we get to this, too. On a different topic, so the district court cited Rule 15b-1 in its order denying your renewed motion for judgment as a matter of law in a new trial. But your brief doesn't cite Rule 15. Did you forfeit that issue by not developing those arguments in your brief? Your Honor, I don't know specifically what 15b-1 is, so I apologize. Do you think there was an amendment here to allow the 1981 claim to go forward, implicitly, because it shows up on the vertical? Implicit, possibly, Your Honor, because there was no motion to amend the pleadings to conform with the evidence, which brings me to my next point, Your Honor, that the trial court, we believe, improperly allowed the jury to consider 1981. It was not pled in the complaint. I think this is getting to Judge Green's question. If you think it was improper for the district court to allow that theory in, why? Because it was not, two reasons. It was not pled in the complaint. Both counts are under Title VII. Number two, and maybe more importantly, it is not presented in the pretrial step as one of the causes of action. When you look at the plaintiff's own concise statement of facts, it talks only about Title VII. When it talks about its damage, it talks only about Title VII. When you read that pretrial step, there is no notice given to the department that 1981 is going to be a cause of action presented to the jury. The department shows up for trial and hears for the first time that the plaintiff is going to put forth a 1981 case during opening. They were not on notice. That pretrial step, that complaint, did not put the department on notice. Here's the thing. I don't disagree with you, honestly, but Rule 15b-1 allows the district court to amend the pleadings and it did so. I will say, we'll have a question for your friend at the other table. It generally requires a motion to amend from the plaintiff. That didn't happen either. On the other hand, I haven't heard from your side that that motion was required or that it wasn't made. I'm concerned that that was forfeited. Your Honor, we did present argument in our initial brief that goes to that issue because we talk about that it wasn't in the complaint and it was not in the pretrial step. What about the fact that I think, if I'm remembering correctly, on the same day that the pretrial step goes in, the draft jury instructions go in and there's a 1981 jury instruction in there that said that I think it's marked contested. It seems like at that point, you guys were on notice that 1981 might be in the case. Your Honor, the party should be able to rely on the pretrial step. The pretrial stipulation clearly indicates that the only cause of action being presented is a Title VII cause of action. That's consistent with the complaint that has two counts both labeled Title VII. In our brief, we make these arguments opposing counsel response to these arguments. We do not believe that we've abandoned that issue on appeal. When the district court was considering the motion pretrial, the department didn't ask for a continuance or anything else to deal with the 1981? No, Your Honor. They did not ask for a continuance. You sort of had a natural continuance, right? Because by virtue of COVID intervening, you had a year between the pretrial step, the instructions and the trial, right? Yes, Your Honor. Again, that doesn't change. The pretrial step was never amended. It was never, at no point did the plaintiff change the pretrial step and introduce Section 1981 as a claim that it was going to present. As the United States Supreme Court said in the Comcast case, that cause of action needs to be pled and litigated and tried. It was not in this case. For that reason, we would ask that the 1981 claim, the verdict on the 1981 claim be reversed. I'll reserve the remainder of my time for rebuttal. We'll give you your full time for rebuttal since you're answering our questions. Mr. Velez. Judge Pryor, Judge Newsom, Judge Grant, Arnaldo Velez on behalf of Lawana Times, the appellee, and I up front will ask you to conclude that this matter should be affirmed. The matter of the 1981 claim pops up in the complaint as reference to it, albeit in a slighted manner. It is also referenced if you examine that so-called pretrial step, not so-called, the pretrial step. In there, there's another reference to 1981 on jurisdictional basis, and then the range of damages that is requested or specified to be viewed are those damages which are traditionally 1981 damages. To say, oh, we were not aware, I take that with a grain of salt. And the argument that's been made is that they were prejudiced, they weren't. I can tell you this was a six-day jury trial. There was a lot of preparation, a lot of cross, and it is fairly evident that there was preparation just in case or to view or touch upon this 1981 issue. Do you think the complaint in the first place adequately alleged a 1981 claim because our precedent requires that claim to be alleged with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a response of pleading? Do you think your pleading met that standard for the Section 1981 claim? It is not a model of pleading, but the reference is made to 1981, and that is noticed sometime. It would put me on notice. It would put any, even the various Tyroles would look at this and say, we're dealing with 1981 here. What if you just listed a bunch of sections of the U.S. Code and didn't make any argument about them? Would that be enough to just reference them? There would be a remedy for that. If it was a non-sequential, nonsensical, you could move to strike those. But there was no attack, no issue raised with respect to this particular pleading. It is a view of yours truly that the argument was said, well, we'll see what we can do at the trial with this. But they were aware of what was going to happen all along, and they prepared for it. And they met it at trials, and they examined it, and they dealt with it. And the jury instructions were there. And then not only that, the verdict form enveloped all of this, which they agreed to. This is a non-issue. The elements are substantially the same, with one exception, the damages. And if you look at the range of damages that was requested at the pre-trial step, those are 1981 damages. How could you not go into- Do you think Rule 15b-1 required you to move to amend the complaint? 15b can be used to request, yes. Traditionally, yes. But the answer is, in this case, the trial court has discretion. When this is pointed out and someone says, judge, I have moved to amend, the discretion is exercised. And that's what happened in this case. Did your client move to amend or not? At that point, my recollection is in the colloquy, the request was, we request that the matter be considered. That is saying, I want to amend. And everyone proceeded along those lines. Can I ask you a related question? Even if there was something that we would call a motion, does 15b-1 apply? I mean, it says, if at trial a party objects that evidence is not within the issues raised by the pleading, the objection, right, was to something said in opening statement. Yes. I'm not even really sure that 15, that anything in Rule 15 sort of squarely addresses the issues in this case. The matter, the manner in which it was addressed was rather nebulous. I agree with you. I could not figure that out myself when I read the transcript. I'm bound by this record the same as this court is. And what I see there is, oh, we object to his having said it. No, I'm, then there was colloquy, and then, well, I want to include the claim. And the judge says, I'm exercising my discretion. And he looked squarely at counsel and said, did you really think that there was a difference? You know the standards are the same. It's only the damages that may be different. And then they said, OK, and moved back, and the trial proceeded. That was an acquiescence to that ruling. As you read your opponent's brief to us, do you read that brief as having teed up an argument that the district court lacked the authority under Rule 15 to allow this?  I don't. I view it as that it was an attack on his discretion, on the trial court's discretion. And he had ample discretion to so do. And when one views the circumstances, it was not an abuse. And the trial proceeded and went forward. The only difference is the damages. They were aware of them. We all know that there's really no substantive differences in the elements for either for the claims. Well, there is, isn't there? Don't you have to show but-for cause for Section 1981, which is the motivating factor for Title VII? But one is a motivating factor. The other one is a but-for. And the but-for, as I have reviewed it, is rather elastic at times, somewhat. There is. There's a subtlety. But it was shown to the jury. That's what was shown. And you can always, at the end, say, I move to amend to conform with the evidence, which is really perfunctory. But the evidence has been adduced to show and met both standards. And under instructions, this jury determined that both standards were satisfied. And that's why it ruled for this plaintiff. Am I misremembering, or is it that a but-for causation standard applies to certain types of Title VII remedies, but a motivating factor standard applies to other types of Title VII remedies? That is correct. That is correct. And with respect to the remedy that you were seeking, it's the same causation standard? The remedy that we were seeking was consistent with what was requested in the plaintiffs. And the evidence that was adduced and consistent with the charges, and I dare say the jury corroborated. They said, yes, we find this. We spent six days on this. This is not meant to go to waste. There is another matter about these codes that were raised. And this pretext, the emperor's clothes were completely torn off when a witness who was with the department, and is no longer with the department, came in and said, that report is a search and kill report. It was done intentionally to get rid of this woman. It was done outside our norms. That woman doesn't like mistimes. That woman never liked mistimes. And the whole matter was laid before the jury. So this attempt to justify it on the basis of these codes on a day that she wasn't there, day that she, as I recollect, was out sick and shown to be sick, and in other instances, and the person that participated in that was held accountable for that, and then say, yeah, but we're going to use that against you when they had never used that standard before in any other proceeding. What was the evidence that the motivation was racial? The question is asked of my client is, why do you say that this is racial? And aren't there blacks now in the department? And she catches the question quickly. And she says, now, after the fact. But when I was there, there were none. And I was treated completely different. And I felt it. I felt it when it happened. And indeed, when the daughter came up to testify, the plaintiff's daughter came up to testify, and she says, aren't there people now, blacks? And yes, they were hired after the fact. The jury saw right through that and said, that was window dressing, meant to justify the action. But there were none before. There was a vacuum. It didn't exist, particularly with this lady that was in charge, who didn't like my client, and made no bones about it. And actually went out and got a group together, which is supposed to investigate and provide guidance. She handpicked the people that were on that group. She sent them down, and it was a search and kill. And then when the report came in, she went over it a few times and changed it to her liking, to justify this adverse action that was being taken out, singling my client. It was all a ruse. And a good jury saw right through it and said, we know what happened. And that's why we got that verdict. So you have the fact that she was the only black person there at the time. You have the fact that you were evidence, I'll say, I'll call it a fact, but evidence that white people committed, I don't know about the same infractions, but equally bad infractions, is what she was accused of. What is the other evidence of racial motivation, as opposed to the woman just didn't like Ms. Tynes? No, no, no, I'm going even beyond that. I'm saying if you analyze the department scheme, she said there were no blacks before. And now the first black comes up and she's chopped off at the knees within a matter of a few days of holding this position. The jury could well interpret that and say, they didn't have any before. This one came in that they targeted, and the next thing, they got rid of her, deviating from their own guidelines, from whatever they do, from their own protocol, because she was black. That's, the jury could safely conclude that. And that's what juries are for. That's why I'm asking you to affirm. There is no, the error is not apparent. There is no collective basis upon which to reverse the findings of that jury and the judgment that follows from it. I ask you again, in conclusion, to affirm this matter. It has been tried. Many years ago, I remember going up and asking for a motion for directed verdict in a case, and a judge said, look, don't come to me in this, in this, one of these courtrooms here. They said, don't come up with technical arguments that you know are, are going to get eventually reversed. Because if I do what you want, this 10-year-old case will become a 15-year-old case after the 11th Circuit reverses me for not having exercised my discretion properly and consistent with justice. And then I sat down. And that lesson has always been with me. This case was tried. It's done. It should be affirmed. Unless you have any questions, I shall sit down. Um, Your Honors, we did not agree to that verdict form. We objected to it because it included 1981, but we recognize that the court had already made its ruling. But we did not agree to that verdict form. We objected during opening statement when we heard for the first time that the plaintiff was going to be presenting a 1981 claim. And we disagree with the plaintiff's statement that the standard is different between, or the standards are the same between Title VII. Am I wrong about the nature of the causation standard for different types of Title VII claims? Your Honor, I'm not familiar with that. I've, Title VII claims, I believe that to prove discrimination, you prove that the discriminatory intent was a motivating factor. Whereas on 1981 claims, the plaintiff has to prove it was a but-for standard. And as the United States Supreme Court said in the Comcast case, that but-for standard is a higher, more difficult standard for the plaintiff to prove. But regardless of whether the standard's different, the evidence of causation would be the same. I'm assuming the plaintiff puts in its evidence of causation, and then the department tries to contest that with other evidence. So what about that different in standard prejudice the department? Well, had we been aware of the but-for standard, there probably would have been more emphasis on the number of black employees in superintendent or assistant superintendents throughout the state. There was just a brief mention of it during the department's direct examination of Assistant Secretary Fosler. But there probably would have been a greater emphasis on the number of blacks employed at those higher level positions. So at the point of testimony, you knew that the district court was letting the claim proceed, didn't you? You're in the middle of trial. This is obviously a very fact-intensive case. The plaintiff was employed with the department for a number of years. And so you're prepared to try a Title VII motivating factor case, and you're blindsided on day one that there's a claim that you believe based on the pretrial stipulation and the complaint were not before the court. And so there was prejudice to the department by not being aware that they were going to be defending against a 1981 claim. And the comments made by opposing counsel are indicative  and that's it. Well, she wasn't treated fairly and she didn't like me and we don't like her. Well, whether the decision maker liked the plaintiff or not is not evidence of intentional discrimination. And when you compare this case to the cases that have been before this court before, there is always some evidence of intentional discrimination, not just unfairness, not just they didn't like us. There's usually comments. Sometimes the comments are remote in time, but there's usually comments. Or the stated reason seems pretext. What does pretext mean? A phony reason. The reason they gave was, we terminated the superintendent of a facility when that facility had 15 codes in a single day. There was no discussion at trial of there being a similar incident or anything even close. There was never a discussion. Well, this facility had five events in a single day or this facility had 10 events in a single day. There was no discussion. So there's no, there's no proof that the department treated like employees differently. There's no offensive comments. There's no evidence of a motivation to discriminate against the plaintiff because she was a female or because she's black. There was no testimony other than we don't like her. Miss Tynes is a nice lady who's been with the department for a long time. That was essentially what their case was, but there was no evidence of intentional discrimination. And for that reason, we request that this court reverse the judgment below.